**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

SCOTT SHAPIRO, COREY AMUNDSON,
AND TANYA MARSHALL, on behalf of
themselves and all others similarly situated,

                                Plaintiffs
                -v-                                                 Case No.

PEACOCK TV LLC,

                                Defendant.
----------------------------------------------------------X

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Scott Shapiro, Corey Amundson, and Tanya Marshall (collectively, "Plaintiffs"), by and through their attorneys, for their Class Action Complaint against Defendant Peacock TV LLC, allege and state as follows:

### INTRODUCTION

1. Plaintiffs, on behalf of themselves and all others similarly situated, bring this class action in relation to Defendant's knowing disclosure of Plaintiffs' personally identifiable information ("PII") to a third-party without Plaintiffs' consent.

2. Plaintiffs are subscribers of Defendant's website, peacocktv.com (the "Website"), which offers, among other things, a wide array of pre-recorded audio visual materials and services.

3. When Plaintiffs requested or obtained specific video materials or services on Defendant's Website, Defendant knowingly disclosed Plaintiffs' PII to Facebook (aka Meta) without notifying Plaintiffs and without their consent.

4. Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA") each time it knowingly disclosed Plaintiffs' PII to Facebook without consent.

1

5.       Defendant is liable to Plaintiffs and the Class for statutory damages in an amount not less than $2,500 for each disclosure of PII, punitive damages, attorneys' fees and costs.

## PARTIES

6.       Plaintiff Scott Shapiro is an individual that is over 18 years old and a citizen of the State of New York. Plaintiff Shapiro resides in Westchester County, New York. Plaintiff Shapiro is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

7.       Plaintiff Corey Amundson is an individual that is over 18 years old and a citizen of the State of New York. Plaintiff Amundson resides in Westchester County, New York. Plaintiff Amundson is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

8.       Plaintiff Tanya Marshall is an individual that is over 18 years old and a citizen of the State of California. Plaintiff Marshall resides in Los Angeles County, California. Plaintiff Marshall is a subscriber of Defendant's Website and requested or obtained specific video materials or services from the Website.

9.       Defendant Peacock TV LLC is a Delaware corporation with its principal place of business at 30 Rockefeller Plaza, New York, New York 10112. Defendant developed, maintains, owns, and/or operates the Website.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there is diversity in citizenship between the parties, there are 100 or more Class Members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

11. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under a law of the United States, namely the VPPA.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant is a resident of New York, its principal place of business is New York, and much of the violative conduct complained of herein originated or occurred in this District.

13. Further, Defendant's Terms of Use specify jurisdiction and venue as the federal and state courts of New York.[1]

## GENERAL ALLEGATIONS

### Defendant's Website and Facebook Pixel (aka Meta Pixel)

14. Defendant is engaged in the business of the rental, sale, or delivery of prerecorded audio visual materials.

15. Defendant is a video streaming service that developed, owns, and/or operates the Website, peacocktv.com, which receives millions of visits per year.

16. The Website provides a wide array of prerecorded audio visual video materials and/or services.

17. Defendant has over 20 million subscribers who, among other things, request or obtain specific prerecorded audio visual video materials or services from the Website.

18. To become a subscriber of the Website, peacocktv.com, individuals create an account by providing other PII, such as their name, address, phone number, and email address, and pay a fee.

19. To create a Facebook account, individuals must use "the name that they go by in

---

[1] https://www.peacocktv.com/terms, updated June 6, 2023 (accessed 7/18/23).

everyday life",[2] such that a person can be personally identified by their Facebook account.

20. When someone creates a Facebook account, a corresponding unique Facebook ID ("FID") is also created.

21. FIDs are uniquely associated with particular Facebook accounts, such that an FID can be used to identify and view the associated Facebook profile. Accordingly, FIDs are PII.

22. Defendant monetizes its Website by, among other things, knowingly collecting and knowingly disclosing its subscribers' PII to Facebook, including data that personally identifies subscribers and the specific prerecorded audio visual video materials or services they request or obtain.

23. Defendant's Website uses a computer code analytics tool called "Facebook Pixel" (aka "Meta Pixel"), which was installed and implemented at the discretion of Defendant.

24. Facebook Pixel tracks the actions of Website visitors, including subscribers, such as the specific prerecorded audio visual video materials or services they request or obtain.

25. When someone requests or obtains specific video materials or services on Defendant's Website, the specific video material or service and the viewer's FID are simultaneously disclosed to Facebook via Facebook Pixel.

26. Defendant installed and implemented the Facebook Pixel on the Website knowing it discloses PII to Facebook.

---

[2] https://transparency.fb.com/en-gb/policies/community-standards/account-integrity-and-authentic-identity/ (accessed July 18, 2023).

27. For example, when someone visits Defendant's Website and clicks on the show, "Longmire," the following computer network traffic is occurring (*Figure 1*):



28. As shown in *Figure 1*, the video name "Longmire" (orange box) and subscriber's FID which is represented by the "c_user" cookie (black box) are disclosed to Facebook.

29. The "PageView" component of Facebook Pixel discloses to Facebook the URL that a viewer has accessed (orange box) (e.g. "https://www.peacocktv.com/watch-online/tv/longmire/8515700119835713112").

30. With the PageView data, someone can simply enter that URL into a browser and they will know what specific video material a person requested or obtained.

31. The "c_user" cookie that is transmitted by the Facebook Pixel contains a viewer's unencrypted FID.

5

32. A Facebook profile can be easily identified and viewed by appending an FID to the end of "facebook.com," such that a person can be identified by their FID.

33. For example, Facebook's founder, Mark Zuckerberg, has an FID of 4. Entering www.facebook.com/4 into a website browser takes one to Mr. Zuckerberg's Facebook page, www.facebook.com/zuck.

34. When PageView data and an FID are simultaneously disclosed, the specific video materials or services that the specific individual requested or obtained can be determined.

35. Defendant knew that PageView data and FIDs are simultaneously disclosed by Facebook Pixel.

36. Defendant also knew that such data in combination identifies subscribers and the specific video materials or services they request or obtain.

37. Defendant did not obtain the consent of Website subscribers to disclose their PII or the specific video materials or services they request or obtain.

38. Subscribers to Defendant's Website are not given an opportunity to withdraw from or prohibit the disclosure of their PII or the prerecorded audio visual video materials or services they request or obtain.

39. The disclosure of subscribers' PII and/or the prerecorded audio visual video materials or services they request or obtain is not incident to the ordinary course of business of Defendant (i.e. it is not for debt collection, order fulfillment, request processing, or the transfer of ownership).

40. The surreptitious disclosure of PII paired with the specific video materials or services that a person requests or obtains is an outrageous invasion of privacy and would be offensive to a reasonable person.

**The Video Privacy Protection Act**

41. In recognition of the outrageous nature of such privacy invasions, Congress passed the VPPA so that individuals can "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, pg. 8.

42. The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection [(c)]." 18 U.S.C. § 2710(b)(1).[3]

43. Under the VPPA, "the term 'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials…" 18 U.S.C. § 2710(a)(4).

44. An entity like Defendant that provides prerecorded audio visual materials or services via streaming is a video tape service provider under the VPPA.

45. Under the VPPA, "the term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

46. Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

47. Where a video tape service provider knowingly discloses the PII of a consumer without consent, the aggrieved person may bring a civil action for, among other things, statutory

---

[3] The statute contains a scrivener's error. The quoted statute states "relief provided in subsection (d)," however courts understand this reference to "subsection (d)" to mean "subsection (c)." See *Feldman v. Star Trib. Media Co. LLC*, No. 22-CV-1731 (ECT/TNL), 2023 WL 2388381, at *n.1 (D. Minn. Mar. 7, 2023).

damages in an amount not less than $2,500, punitive damages, and attorneys' fees and costs. 18 U.S.C. § 2710(c)(2)(A)-(D).

## Tolling of the Statute of Limitations

48. All applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and Class members could not have reasonably discovered Defendant's practices of disclosing their PII with Facebook until shortly before this class action litigation commenced.

49. Defendant was and remains under a continuing duty to disclose to Plaintiffs and Class members its practice of sharing PII to Facebook. As a result of the active concealment by Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## PLAINTIFFS/PROPOSED CLASS REPRESENTATIVES

### Scott Shapiro

50. Plaintiff Scott Shapiro first subscribed to Defendant's Website, peacocktv.com, on or about July 2020.

51. To become a subscriber of Defendant's Website, Plaintiff Shapiro provided Peacock with his name, email address and paid a fee.

52. Among other means, Plaintiff Shapiro uses web browsers to access the Website.

53. Plaintiff Shapiro sometimes watches videos on the Website while he is not logged into the Website. Plaintiff Shapiro also looks at and browses lists of available videos, clicks on specific video or episode titles, and watches video trailers on the Website while he is not logged into the Website. Often, this is because Defendant and the Website forces him to periodically re-enter his login information between visits to the Website.

54. Since becoming a subscriber of the Website, Plaintiff Shapiro has regularly requested or obtained specific video materials or services from the Website both while logged into and not logged into the Website and using the same device and/or browser in which he is logged into his Facebook account.

55. Plaintiff Shapiro never specifically consented to Defendant disclosing the video materials or services that he requests or obtains to others, and he was unaware that Defendant was sharing that information with Facebook/Meta.

56. Plaintiff Shapiro has a Facebook account, which he is perpetually logged into on his computer and smartphone.

57. Plaintiff Shapiro's Facebook profile is associated with his real (legal) name and his email address.

58. Plaintiff Shapiro's Facebook profile and his email address contain his name, whereby Plaintiff Shapiro can be personally identified by that information.

59. Each time Plaintiff Shapiro requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Shapiro's FID and the specific video materials or services he requested or obtained from Defendant to Facebook via Facebook Pixel.

60. This paired information personally identifies Plaintiff Shapiro and the video material that he requested, obtained, accessed, and/or watched on Defendant's Website.

61. Plaintiff Shapiro did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Shapiro's consent in a form separate and distinct from other legal or financial obligations.

62. Defendant did not provide Plaintiff Shapiro with an opportunity to withdraw from the disclosure of his PII.

63. Defendant's disclosure of Plaintiff Shapiro's PII was not related to an ordinary course of business (e.g. debt collection, order fulfillment, request processing, or any transfer of ownership).

**Corey Amundson**

64. Plaintiff Corey Amundson first subscribed to Defendant's Website, peacocktv.com, in approximately July 2020.

65. To become a subscriber of Defendant's Website, Plaintiff Amundson provided Peacock with his name, email address and paid a fee.

66. Among other means, Plaintiff Amundson uses web browsers to access the Website.

67. Plaintiff Amundson sometimes watches videos on the Website while he is not logged into the Website. Plaintiff Amundson also looks at and browses lists of available videos, clicks on specific video or episode titles, and watches video trailers on the Website while he is not logged into the Website. Often, this is because Defendant and the Website forces him to periodically re-enter his login information between visits to the Website.

68. Since becoming a subscriber of the Website, Plaintiff Amundson has regularly requested or obtained specific video materials or services from the Website both while logged into and not logged into the Website and using the same device and/or browser in which he is logged into his Facebook account.

69. Plaintiff Amundson never specifically consented to Defendant disclosing the video materials or services that he requests or obtains to others, and he was unaware that Defendant was sharing that information with Facebook/Meta.

70. Plaintiff Amundson has a Facebook account, which he is perpetually logged into on his computer and smartphone.

71. Plaintiff Amundson's Facebook profile is associated with his real (legal) name and his email address.

72. Plaintiff Amundson's Facebook profile and his email address contain his name, whereby Plaintiff Amundson can be personally identified by that information.

73. Each time Plaintiff Amundson requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Amundson's FID and the specific video materials or services he requested or obtained from Defendant to Facebook via Facebook Pixel.

74. This paired information personally identifies Plaintiff Amundson and the video material that he requested, obtained, accessed, and/or watched on Defendant's Website.

75. Plaintiff Amundson did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Amundson's consent in a form separate and distinct from other legal or financial obligations.

76. Defendant did not provide Plaintiff Amundson with an opportunity to withdraw from the disclosure of his PII.

77. Defendant's disclosure of Plaintiff Amundson's PII was not related to an ordinary course of business (e.g. debt collection, order fulfillment, request processing, or any transfer of ownership).

**Tanya Marshall**

78. Plaintiff Tanya Marshall first subscribed to Defendant's Website, peacocktv.com, in approximately April 2020.

79. To become a subscriber of Defendant's Website, Plaintiff Marshall provided Peacock with her name, email address and paid a fee.

80. Among other means, Plaintiff Marshall uses web browsers to access the Website.

81. Plaintiff Marshall sometimes watches videos on the Website while she is not logged into the Website. Plaintiff Marshall also looks at and browses lists of available videos, clicks on specific video or episode titles, and watches video trailers on the Website while she is not logged into the Website. Often, this is because Defendant and the Website forces her to periodically re-enter her login information between visits to the Website.

82. Since becoming a subscriber of the Website, Plaintiff Marshall has regularly requested or obtained specific video materials or services from the Website both while logged into and not logged into the Website and using the same device and/or browser in which she is logged into her Facebook account.

83. Plaintiff Marshall never specifically consented to Defendant disclosing the video materials or services that she requests or obtains to others, and she was unaware that Defendant was sharing that information with Facebook/Meta.

84. Plaintiff Marshall has a Facebook account, which she is perpetually logged into on her computer and smartphone.

85. Plaintiff Marshall's Facebook profile is associated with her real (legal) name and her email address.

86. Plaintiff Marshall's Facebook profile and her email address contain her name, whereby Plaintiff Marshall can be personally identified by that information.

87. Each time Plaintiff Marshall requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff Marshall's FID and the

specific video materials or services she requested or obtained from Defendant to Facebook via Facebook Pixel.

88. This paired information personally identifies Plaintiff Marshall and the video material that she requested, obtained, accessed, and/or watched on Defendant's Website.

89. Plaintiff Marshall did not consent to the disclosure of her PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff Marshall's consent in a form separate and distinct from other legal or financial obligations.

90. Defendant did not provide Plaintiff Marshall with an opportunity to withdraw from the disclosure of her PII.

91. Defendant's disclosure of Plaintiff Marshall's PII was not related to an ordinary course of business (e.g. debt collection, order fulfillment, request processing, or any transfer of ownership).

## CLASS ALLEGATIONS

**A.   Definition of the Class**

92. Plaintiffs bring this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "Class" or "Class Members"). Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All persons in the United States who (1) have a Facebook account, (2) subscribed to peacocktv.com, and (3) requested or obtained specific video materials or services from peacocktv.com.**

This definition is subject to modification as discovery discloses further information. Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

93. Excluded from the Class are Defendant, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 USC § 455(b) and their immediate families.

94. This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

a) The Class, which includes thousands of members, is so numerous that joinder of all Class Members is impracticable;

b) There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

c) Questions of law and fact, such as those enumerated below, which are common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

d) The claims of the representative party are typical of the claims of the Class;

e) A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

f) The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

g) The prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

h) There are no unusual difficulties foreseen in the management of this class action; and

i) Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

**B.    Numerosity**

95.    There are millions of individuals who are subscribers of Defendant and have requested or obtained specific video materials or services from Defendant's Website. Accordingly, the Class Members are so numerous that joinder of all parties is clearly impracticable.

**C.    Commonality**

96.    Numerous common questions of law and fact predominate over any questions affecting individual Class Members including, but not limited to, the following:

a) Whether Defendant collected PII of Class Members who visited its Website;

b) Whether Defendant disclosed PII of Class Members who requested or obtained specific video materials or services from its Website;

c) Whether Defendant's disclosure was made knowingly;

d) The nature and extent of PII disclosed;

e) How PII was disclosed and to whom;

f) Whether Defendant's Website obtains informed written consent in a form distinct and separate from any form setting forth other legal or financial obligations before disclosing PII of subscribers;

g) Whether Defendant's Website provides a clear and conspicuous opportunity for subscribers to withdraw from disclosures on a case-by-case basis; and

h) Whether the disclosures of Class Members PII warrants punitive damages.

**D.    Typicality**

97.    Plaintiffs have the same interests in this matter as all other members of the Class and their claims are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same

material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

98. The claims of the Plaintiffs and other Class Members have a common cause and their damages are of the same type. The claims originate from the disclosure of PII by Defendant without consent.

99. All Class Members have been aggrieved by Defendant's disclosure of their PII without consent and are entitled to, inter alia, statutory damages.

**E.  Adequacy of Representation**

100. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and he does not have interests adverse to the Class.

101. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiffs and all absent Class Members.

**F.  Class Treatment is the Superior Method of Adjudication**

102. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

f) The Plaintiffs seek relief relating to the Defendant's common actions and the equitable relief sought would commonly benefit the Class as a whole;

g) The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

h) The proposed class action is manageable.

## CAUSE OF ACTION I

## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT,

## 18 U.S.C. § 2710

103. Plaintiffs restate all allegations of this Complaint as if fully restated herein.

104. Defendant, through its Website, is engaged in the business of the rental, sale, or delivery of prerecorded audio visual materials (e.g. videos) to the Plaintiffs and Class in multiple states and across state borders, thus Defendant is a "video tape service provider" under the VPPA.

105. The Plaintiffs and Class are "consumers" under the VPPA because they are "subscribers" of Defendant, a video tape service provider, and have requested or obtained specific video materials or services from Defendant's Website.

106. When the Plaintiffs and Class Members requested or obtained specific video materials or services from Defendant's Website, Defendant knowingly disclosed their FIDs and the specific video materials or services requested or obtained to Facebook via Facebook Pixel.

107. The disclosed information is PII because Facebook and anyone with access to that information can personally identify the Plaintiffs and Class Members, as well as the specific video materials or services that each of those respective individuals requested or obtained.

108. The Plaintiffs and Class did not consent to Defendant disclosing their PII.

109. Defendant did not provide an opportunity for the Plaintiffs and Class to withdraw from the disclosure of their PII.

110. Defendant's disclosure of the Plaintiffs' and Class' PII was not in the ordinary course of business.

111. Defendant is liable to the Plaintiffs and Class for statutory damages of not less than $2,500 for each disclosure of their PII, punitive damages, attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, prays for judgment as follows:

a. Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

b. Designation of the Plaintiffs as representative of the proposed Class and designation of her counsel as Class counsel;

c. Judgment in favor of the Plaintiffs and Class Members as against the Defendant;

d. An award to each Plaintiff and Class Member for statutory damages not less than $2,500 and punitive damages, including pre- and post-judgment interest;

e. An award of injunctive relief prohibiting Defendant from disclosing the PII of its subscribers without consent and in accordance with the VPPA;

f. An award of attorneys' fees and costs, including pre- and post-judgement interest;

g. An Order holding that Defendant's disclosure of the Plaintiffs' and Class' PII without consent was in violation of the VPPA; and

h. Such further relief that this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands a trial by jury of all issues so triable.

Date: July 21, 2023

Respectfully submitted,

/s/ Todd S. Garber

**FINKELSTEIN, BLANKENSHIP, FREI-PEARSON & GARBER, LLP**
Todd S. Garber
One North Broadway Suite 900
White Plains, NY 10601
T: (914) 298-3281 ext 32803
E: tgarber@fbfglaw.com

Caleb Marker*
*Pro hac vice application forthcoming
**ZIMMERMAN REED LLP**
6420 Wilshire Boulevard, Suite 1080
Los Angeles, CA 90048
T: (310) 752-9387
E: caleb.marker@zimmreed.com

Jeffrey J. Harrington*
*Pro hac vice application forthcoming
**ZIMMERMAN REED LLP**
80 South 8th Street, Suite 1100
Minneapolis, MN 55402
T: (612) 341-0400
E: jeffrey.harrington@zimmreed.com