**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**-------------------------------------------------------X**

SCOTT SHAPIRO, COREY AMUNDSON,
AND TANYA MARSHALL, DANIEL WEISS,
MCKENZIE EVANS, on behalf of
themselves and all others similarly situated,

                            Plaintiffs

            -v-                                          Case No. 7:23-cv-06345-KMK

PEACOCK TV LLC,

                            Defendant.
**-------------------------------------------------------X**


### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.     INTRODUCTION ..........................................................................................................1

II.     BACKGROUND .........................................................................................................2

      A.     Peacock Is A VTSP and It Knowingly Discloses Plaintiffs' PII to Facebook ........2

      B.     Plaintiffs Are Subscribers to Peacock's Website and Its Video Materials..............3

      C.     The California Petition ........................................................................................4

III.     MOTION TO DISMISS STANDARD ...............................................................................6

IV.     ARGUMENT..............................................................................................................6

      A.     Plaintiffs Are VPPA Subscribers When They Request or Obtain Video Materials While Logged In or Out of Their Website Account, Even if the Video Materials Are Made Publicly Available By Peacock .............................................................7

      B.     Lists of Available Videos and Video Trailers Are Video Materials Covered by the VPPA ...................................................................................................................20

      C.     Disclosure of a URL is Disclosure of Specific Video Materials...........................22

      D.     The CAC Adequately Alleges Peacock Knowingly Disclosed Specific Video Materials to Facebook ........................................................................................23

V.     CONCLUSION ........................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Am.'s Test*,
   680 F. Supp. 3d 31 (D. Mass. 2023) ........................................................................ 24

*Aldana v. GameStop, Inc.*,
   2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ............................................... 1, 20, 21

*Ambrose v. Bos. Globe Media Partners LLC*,
   2022 WL 4329373 (D. Mass. Sept. 19, 2022) .......................................................... 24

*Austin-Spearman v. AMC Network Ent. LLC*,
   98 F. Supp. 3d 662 (S.D.N.Y. 2015) ........................................ 8, 11, 16, 17, 19, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 6, 23

*Belozerov v. Gannett Co.*,
   646 F. Supp. 3d 310 (D. Mass. 2022) ...................................................................... 24

*Campos v. Tubi, Inc.*,
   2024 WL 496234 (N.D. Ill. Feb. 8, 2024) ............................................................... 23

*Cantu v. Tapestry, Inc.*,
   2023 WL 6451109 (S.D. Cal. Oct. 3, 2023) ............................................................. 21

*Carroll v. Gen. Mills, Inc.*,
   2023 WL 4361093 (C.D. Cal. June 26, 2023) .......................................................... 21

*Carter v. Scripps Networks, LLC*,
   670 F. Supp. 3d 90 (S.D.N.Y. 2023) ...................................................... 8, 11, 16, 17

*Czarnionka v. Epoch Times*,
   2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ....................................................... 24

*Div. 1181 v. N.Y.C. Dep't of Educ.*,
   9 F.4th 91 (2d Cir. 2021) ....................................................................................... 2, 6

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir. 2015) ........................................................................... 8, 14

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ........................................................................................... 6, 23

*Feldman v. Star Tribune Media Co. LLC*,
   659 F. Supp. 3d 1006 (D. Minn. 2023) ........................................................... 7, 9, 20

*Gardener v. MeTV*,
   681 F. Supp. 3d 864 (N.D. Ill. 2023) ........................................................................ 16

*Gardner v. MeTV*,
   2024 WL 779728 (N.D. Ill. Feb. 15, 2024) ......................................................... 16, 17

*Ghanaat v. Numerade* Labs,
   689 F. Supp. 3d 714 (N.D. Cal. 2023) .................................................................. 22, 23

*Golden v. NBCUniversal, LLC*,
   688 F. Supp. 3d 150 (S.D.N.Y. 2023) ...................................................... 9, 16, 20, 22

*Goldstein v. Fandango Media, LLC*,
   2023 WL 3025111 (S.D. Fla. Mar. 7, 2023) .............................................................. 24

*Harris v. Pub. Broad. Serv.*,
   662 F. Supp. 3d 1327 (N.D. Ga. 2023) .......................................................... 8, 9, 10, 23

*Heather v. Healthline Media, Inc.*,
   2023 WL 8788760 (N.D. Cal. Dec. 19, 2023) ........................................................... 16

*In re Hulu Priv. Litig.*,
   2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .................................................... 6, 9, 14

*In re Hulu Priv. Litig.*,
   2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........................................................... 14

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................................................................... 9

*Jackson v. Fandom, Inc.*,
   2023 WL 4670285 (N.D. Cal. July 20, 2023) .................................................... 8, 9, 10

*Kuzenski v. Uproxx LLC*,
   2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) ............................................ 8, 9, 11, 15, 16, 17

*Lamb v. Forbes Media LLC*,
   2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023) ............................................... 16, 17, 22

*M. K. v. Google LLC*,
   2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) ..................................................... 8, 9, 10

*Maroney v. Woodstream Corp.*,
  2023 WL 6318226 (S.D.N.Y. Sept. 28, 2023) ....................................................... 25

*Martin v. Meredith*,
  657 F. Supp. 3d 277 (S.D.N.Y. 2023) ................................................................... 22

*Osheske v. Silver Cinemas Acquisition Co.*,
  2023 WL 8188464 (C.D. Cal. Oct. 31, 2023) ....................................................... 20

*Perry v. Cable News Network, Inc.*,
  854 F.3d 1336 (11th Cir. 2017) ............................................................................ 20

*Peterson v. Learfield Commc'ns, LLC*,
  2023 WL 9106244 (D. Neb. Dec. 8, 2023) ........................................................... 11

*Salazar v. Nat'l Basketball Ass'n*,
  685 F. Supp. 3d 232 (S.D.N.Y. 2023) ................................................................... 16

*Sellers v. Bleacher Rep., Inc.*,
  2023 WL 4850180 (N.D. Cal. July 28, 2023) ...................................... 7, 9, 21, 22, 24

*Stark v. Patreon, Inc.*,
  656 F. Supp. 3d 1018 (N.D. Cal. 2023) ................................................................ 22

*Tawam v. Feld Ent. Inc.*,
  684 F. Supp. 3d 1056 (S.D. Cal. 2023) ................................................................ 16

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*,
  2024 WL 2853106 ................................................................................................. 15

**Statutes**

18 U.S.C. § 2710(a)(1) ................................................................................................. 7

18 U.S.C. § 2710(a)(4) ................................................................................................. 7

18 U.S.C. § 2710(a)(3) ............................................................................................... 20

18 U.S.C. § 2710(a)(4) ........................................................................................ 7, 8, 11

18 U.S.C. § 2710(b) ................................................................................................... 20

18 U.S.C. § 2710(b)(1) ................................................................................. 1, 2, 6, 7, 10, 12

18 U.S.C. § 2710(b)(2)(A)-(F) ........................................................................................ 13

18 U.S.C. § 2710(b)(2)(D)............................................................................................... 20

**Rules**

Fed. R. Civ. P. 5.1............................................................................................................ 22

## I. INTRODUCTION

Plaintiffs assert that Defendant Peacock TV, LLC ("Peacock") collects and discloses to Facebook their identities and the video materials they request or obtain on peacocktv.com ("Website"). The Consolidated Class Action Complaint ("CAC") asserts that Peacock unlawfully disclosed Plaintiffs' personally identifiable information ("PII") in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710(b)(1) ("VPPA"). Peacock moves to dismiss the CAC pursuant to Rule 12(b)(6).

Plaintiffs' Complaint presents a straightforward claim of Peacock's violation of the VPPA. It sufficiently alleges all the elements of a VPPA claim: Peacock disclosed the subscriber's identity (Facebook ID); the video material's identity (video name and URL); and the connection between them (Facebook Pixel disclosed to Facebook that the subscriber requested or obtained the video materials). *See Aldana v. GameStop, Inc.*, 2024 WL 708589, at *7 (S.D.N.Y. Feb. 21, 2024). It also sufficiently alleges that Peacock acted "knowingly" because it installed the Pixel fully aware of its functions, and because it knew or should have known that its subscribers were requesting or obtaining the video materials. *See generally* CAC ¶¶ 2–4, 6–10, 16–18, 25–28, 29–38, 43, 55–68, 69–82, 83–96, 97–110, 111–123, 135–143.

The VPPA imposes a duty on Peacock to not disclose the PII of its subscribers to third parties like Facebook. *See* 18 U.S.C. § 2710(b)(1). Once the Plaintiffs established a subscriber relationship with Peacock by setting up an account, providing personal information, and paying a fee, and the Plaintiffs' subscription is to Peacock's video materials, then the VPPA imposes a duty on Peacock to not disclose Plaintiffs' PII to third parties. Peacock may not disclose to Facebook that the Plaintiffs requested or obtained a video material from Peacock—no matter if the Plaintiffs are logged into their accounts or not. The VPPA has no "login requirement" as Peacock seeks to impose upon Plaintiffs.

Plaintiffs respectfully disagree with Peacock's interpretation of the VPPA. Peacock's arguments, if accepted by the Court, would shrink the VPPA to irrelevancy and provide a giant loophole for all video tape service providers ("VTSP") like Peacock to disclose PII to Facebook and other third parties. If the Court were to conclude that the VPPA requires subscribers be logged into their accounts to receive the protections of the VPPA, then all VTSPs could design their websites to make some or all their video materials publicly available prior to login whenever they wanted for however long they wanted, if it suited their needs. VTSPs would then control the privacy protections of subscriber's PII, and could use that control at its whim or when it is financially advantageous to sell the PII to others. Thus, VTSPs would be able to disclose every subscriber's video material requests with impunity. This is not what the VPPA says, nor what Congress intended.

## II.    BACKGROUND

With some exceptions not applicable here, the VPPA provides for damages when "[a] [VTSP]...knowingly discloses, to any person, [PII] concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Plaintiff alleges the following facts, which are taken as true for the purposes of a Motion to Dismiss. *See Div. 1181 v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021).

### A.    Peacock Is A VTSP and It Knowingly Discloses Plaintiffs' PII to Facebook

Peacock developed, owns, and operates the Website. CAC ¶¶ 2, 11, 17. The Website offers an array of video materials. *Id.* ¶ 2. Peacock's goods and services are streaming video materials delivered via its Website. *Id.* ¶¶ 17, 49. Its video materials include lists of available TV shows and movies, TV show and movie trailers, and full-length TV shows or movies. *See, e.g.*, *id.* ¶¶ 2, 44, 58. Peacock offers some video materials inside the login page and some outside the login page. *See e.g., id.* ¶¶ 58-59. The video materials offered outside the login page are publicly accessible. *Id.* ¶ 43(a), (b), (c).

Peacock monetizes its Website, in part, by collecting and disclosing subscriber information to Facebook. *Id.* ¶ 24. The Website uses a code analytics tool called "Facebook Pixel," which tracks the actions of subscribers, such as the pages or videos they view. *Id.* ¶¶ 25–26. When a Facebook account is created, a corresponding Facebook ID (or FID) number is also created. *Id.* ¶¶ 21–22. A user's Facebook profile can be identified and viewed by appending the user's Facebook ID number to the end of "Facebook.com." *Id.* ¶ 34.

If an individual conducts a search and clicks on a list of available TV shows and movies or watches a TV show or movie trailer while not logged into his Website account but while logged in to Facebook on the same web browser and device, the individual's Facebook ID, the video material name, and a URL of the video the individual viewed "are simultaneously sent to Facebook via Facebook Pixel." *Id.* ¶ 27; *see, e.g.*, ¶¶ 58-59, 64, 89. The viewer's Facebook ID is sent to Facebook via a "cookie." *Id.* ¶¶ 33, 36. At the same time, the "PageView" component of the Pixel discloses to Facebook the video name and URL a viewer accessed. *Id.* ¶¶ 30-32. The CAC illustrates this process using the partially redacted Facebook ID of an unidentified user. *See id.* ¶ 29. If Facebook or anyone else enters the video URL and the appended-Facebook-ID into a web browser, it would be possible to identify which Peacock video trailer or list of available videos a particular user had viewed. *Id.* ¶¶ 31–34.

### B. Plaintiffs Are Subscribers to Peacock's Website and Its Video Materials

Plaintiffs have had an ongoing commitment or relationship with Peacock for several years. *See* CAC ¶¶ 55, 69, 83, 97, 111. Plaintiffs subscribed to Peacock's Website by creating a Peacock Website account, providing Peacock their names, addresses, phone numbers, and email, and paying a fee ("Website Account"). *Id.* ¶¶ 2, 20, 56, 69, 84, 98, 112. Plaintiffs accessed their Website Account to request or obtain Peacock's video materials. *Id.* ¶¶ 57-59, 70-72, 85-87, 99-100, 113-15. Plaintiffs have

requested and obtained specific video materials or services from Peacock both while logged into and not logged into their Website Accounts. *Id*. ¶¶ 59, 77, 87, 100, 115.

Each Plaintiff also has a Facebook account, "which he [or she] is perpetually logged into." *Id*. ¶¶ 61, 75, 89, 103, 117. To create a Facebook account, each Plaintiff must use the name they go by in everyday life, such that they can be personally identified by their Facebook account. *Id*. ¶ 21. Each Plaintiff's Facebook profile contains his or her name. *Id.* ¶¶ 62–63, 76–77, 90–91, 104-05, 118-19. Since establishing their Website Accounts, each Plaintiff has watched video trailers and has viewed lists of available videos while not logged into their Website Account but while logged into his or her Facebook account on the same web browser and device. *Id.* ¶¶ 58–59, 72–73, 86–87, 100-01, 114-15.

Each time a Plaintiff watched video trailers and viewed lists of available videos while not logged into their Website Account, Peacock disclosed his or her Facebook ID, as well as the video name and the URL of the video trailer or list of available videos that he or she viewed to Facebook via the Pixel. *See, e.g.*, *id.* ¶¶ 30-32, 43, 58, 64, 72, 86, 100, 114. Peacock installed the Pixel on the Website knowing that it discloses PII to Facebook. *Id*. ¶¶ 24–28. Peacock also knew that Plaintiffs were subscribers because when Plaintiffs visit Peacock's Website while not logged in because they are identified by their Facebook ID and they were tracked by a "mid" ID cookie. *See id*. ¶ 43(g), (h). Plaintiffs allege that Peacock violated the VPPA each time it knowingly disclosed their Facebook ID and viewed-video-trailer-URLs and viewed-list-of-available-videos-URLs (and those of would-be class members) to Facebook via the Pixel. *Id.* ¶¶ 4, 135–43.

### C. The California Petition

The law firm of Zimmerman Reed LLP ("Zimmerman Reed") represents California residents who are current or former subscribers to Peacock's Website in a Petition to Compel Arbitration ("Petitioners"). *See Amescua et al. v. Peacock TV LLC*, Case No. 23STCP03733 (Cal. Super. Ct., Los

Angeles Cnty.); Doc. No. 12, Mem. of Points and Auth. at 1, *Amescua et al. v. Peacock TV, LLC*, No. 23-cv-09573 (C.D. Cal. Nov. 27, 2023) ("C.D. Cal. Mem."). The Petition is currently pending in California state court where the case has been stayed since February 2024. *See* Minute Order, *Amescua et al. v. Peacock TV LLC*, Case No. 23STCP03733 (Cal. Super. Ct., Los Angeles Cnty. Feb. 14, 2024).

Peacock insinuates that Zimmerman Reed is acting improperly by representing the California Petitioners in California state court and the Plaintiffs here. Mem. in Supp. at 8 and n.4. But Peacock forgets how the parties got here and why. Peacock initially embraced arbitration. *See* C.D. Cal. Mem. at 15. Peacock drafted the Website's terms of use ("TOU") requiring arbitration of claims and waiver of class actions. *Id*. Petitioners followed the requirements of the TOUs and filed individual Demands for Arbitration with JAMS, reasonably asserting that JAMS was the appropriate and agreed-upon arbitral forum. *Id*. Peacock initially asserted that JAMS did not have jurisdiction. *Id*. Peacock then unilaterally modified the TOU to omit arbitration and the class action waiver and urged Petitioners to bring their claims in court. *Id*. Based on Peacock's argument, JAMS asserted that it did not have jurisdiction to arbitrate the Petitioners' claims absent a court order. *Id*. at 15-16.

Given the successive actions of Peacock to change terms to derail Petitioners, there is nothing remotely improper in what Zimmerman Reed has done. *Id*. at 16. Zimmerman Reed filed the Complaint in this case on behalf of the Plaintiffs to preserve their claims, as well as the Petitioner's claims, in the event a court or arbitrator would accept Peacock's arguments and find that there is no arbitration agreement between the parties. *Id*. The Petitioners filed the Petition to preserve their right to an arbitral forum. *Id*. The Complaint was filed in New York because the TOU unilaterally modified by Peacock omitted arbitration and did not have a California arbitration forum selection provision (it deleted arbitration), but rather had a New York forum-selection provision. *Id*. The Petition was filed in California because the Petitioners are California residents, the Petitioners requested Los Angeles as

the arbitration site in their Demands, and the alleged-applicable TOUs have a California arbitration forum-selection provision, as applied to the California Petitioners, to be within 100 miles of their home. *Id*. Considering the circumstances caused by Peacock, Zimmerman Reed has taken the actions it deems best for its clients to preserve their claims.

## III.    MOTION TO DISMISS STANDARD

Although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95.

## IV.    ARGUMENT

"The impetus for the [VPPA] was a newspaper's obtaining and publishing a list of video tapes that Supreme Court nominee Judge Robert H. Bork rented from his local video store." *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *4 (N.D. Cal. Aug. 10, 2012).[1] The VPPA provides that "[a] [VTSP] who knowingly discloses, to any person, [PII] concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). A VTSP is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). A "consumer" is "any renter, purchaser, or

---

[1] The history of the VPPA is set forth in more detail in the Plaintiffs' pre-motion letters. *See* Doc. Nos. 16 and 30.

subscriber of goods or services from a VTSP." *Id*. § 2710(a)(1). A "subscriber" is not a separately defined term under the VPPA. PII "includes information which identifies a person as having requested or obtained specific video materials or services from a [VTSP]." *Id*. § 2710(a)(3). Putting it all together, "[f]or there to be an actionable VPPA violation, the [VTSP] must have knowingly disclosed: 1) a [subscriber]'s identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." *Feldman v. Star Tribune Media Co. LLC*, 659 F. Supp. 3d 1006, 1019 (D. Minn. 2023).

Peacock argues that the Complaint should be dismissed because: (A) Plaintiffs are not VPPA subscribers when they request or obtain video materials while logged out of their Website Account and access video materials made public by Peacock; (B) Video lists and trailers are not video materials under the VPPA; (C) Plaintiffs fail to allege disclosure of specific video materials; and (D) Plaintiffs fail to allege Peacock knowingly disclosed subscribers' PII to Facebook. None have merit.

A. **Plaintiffs Are VPPA Subscribers When They Request or Obtain Video Materials While Logged In or Out of Their Website Account, Even if the Video Materials Are Made Publicly Available By Peacock**

The VPPA applies to "a subscriber of goods or services from a [VTSP]." 18 U.S.C. § 2710(a)(1). Plaintiffs have alleged, and Peacock does not dispute, that Peacock is a VTSP. *See* CAC ¶ 136. Peacock is a VTSP because it engages in the delivery of prerecorded video cassette tapes or similar audio visual materials. CAC ¶¶ 16, 136; *see* 18 U.S.C. § 2710(a)(4); *Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023) (holding that VTSPs include websites that deliver video materials). Video materials are the "goods and services" Peacock that delivers. *See* CAC ¶ 16, 136; 18 U.S.C. § 2710(a)(1), (a)(4).

The term "subscriber" is not defined in the VPPA. Courts define a VPPA "subscriber" as a person: (1) who has established a subscriber relationship with a VTSP (hereinafter, "Subscriber-VTSP

7

Relationship"); and (2) whose subscription is connected to the VTSP's video materials (hereinafter, the "Subscription-Video Materials Connection"). *See, e.g., Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99 (S.D.N.Y. 2023); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669-71 (S.D.N.Y. 2015); *see also Ellis v. Cartoon Network, Inc.,* 803 F.3d 1251, 1256 (11th Cir. 2015) (citing *Austin-Spearman*); *Kuzenski v. Uproxx LLC*, 2023 WL 8251590, at *5 (C.D. Cal. Nov. 27, 2023) (citing the "*Ellis* factors").

With regard to the Subscriber-VTSP Relationship, "an individual must do more than simply take advantage of a provided service…in order to have acted as a subscriber of the provider." *Austin-Spearman*, 98 F. Supp. 3d at 671. Rather, a "subscriber" "requires some sort of ongoing commitment or relationship between the user and the entity." *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023). "Relevant considerations include whether the relationship between the plaintiff and the [VTSP] involves payment, registration, establishment of an account, provision of personal information, receipt or delivery of goods or services, expressed association, and/or access to restricted content." *M. K. v. Google LLC*, 2023 WL 4937287, at *4 (N.D. Cal. Aug. 1, 2023) (citing the *Ellis* factors). However, "[n]o single factor is dispositive." *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023).

With regard to the Subscription-Video Materials Connection, Courts require the subscription to be to the VTSP's video materials, not just any goods and services provided by the VTSP, given that the VTSP is defined as being in the "business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4); *see Carter*, 670 F. Supp. 3d at 99. For example, a subscription cannot be to only the VTSP's newsletter or email list, unless the newsletter or email list "was a condition to accessing the site's videos" or "enhanced or in any way affected their viewing experience." *See id.* at 99. Video materials include videos of any duration and lists of videos

in which consumer shows interest. *See Sellers*, 2023 WL 4850180, at *3; *Feldman*, 659 F. Supp. 3d at 1020; *Golden v. NBCUniversal, LLC*, 688 F. Supp. 3d 150, 161 (S.D.N.Y. 2023). However, courts have "not create[d] a bright-line, categorical rule requiring that a subscription must provide access to exclusive video content not otherwise available to viewers without a subscription. This is just one factor that the Court considers in addition to the *Ellis* factors [that are part of Subscriber-VTSP Relationship analysis], and it is not dispositive or outcome determinative on its own." *Kuzenski*, 2023 WL 8251590, at *5 n. 6.

In this case, the Plaintiffs have adequately alleged that they have a Subscriber-VTSP Relationship with Peacock. Plaintiffs have had an "ongoing commitment or relationship" with Peacock for several years. *See* CAC ¶¶ 55, 69, 83, 97, 111. Plaintiffs created their Website Account and subscribed to the Website by providing Peacock their names, email, and paying a fee. *Id*. ¶¶ 56, 69, 84, 98, 112. Plaintiffs accessed the Website to request or obtain Peacock's video materials. *Id*. ¶¶ 57-59, 70-72, 85-87, 99-100, 113-15. Plaintiffs have requested and obtained specific video materials or services from the Website both while logged into and not logged into their Website Accounts. *Id*. ¶¶ 59, 77, 87, 100, 115. Plaintiffs also have alleged a Subscription-Video Materials Connection by alleging that their subscription is connected to Peacock's video materials. Again, Plaintiffs accessed their Website Accounts to request or obtain Peacock's video materials. *Id*. ¶¶ 57-59, 70-72, 85-87, 99-100, 113-115. Plaintiffs have requested and obtained specific video materials or services from the Website both while logged into and not logged into their Website Accounts. *Id*. ¶¶ 59, 77, 87, 100, 115. Plaintiffs' allegations are sufficient to show that Plaintiffs are VPPA subscribers of Peacock. *See Jackson*, 2023 WL 4670285, at *4; *M. K. v. Google*, 2023 WL 4937287, at *4; *Harris*, 662 F. Supp. 3d at 1331-32; *In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1222 (C.D. Cal. 2017); *In re Hulu*, 2012 WL 3282960, at *8.

The VPPA prohibits VTSPs like Peacock from disclosing to third parties the video materials requested or obtained by its subscribers. *See* 18 U.S.C. § 2710(b)(1). Plaintiffs have requested and obtained specific video materials from the Website both while logged into and not logged into their Website Accounts. *See* CAC ¶¶ 59, 77, 87, 100, 115. Plaintiffs allege that Peacock is violating the VPPA by disclosing the following video materials they request or obtain when not logged into their Website Accounts: (a) view pages on the Website with video trailers; and/or (b) view pages on the Website with lists of video episodes. *Id.* ¶ 43. Plaintiffs further allege that they are subscribers even when requesting, obtaining, and/or viewing public trailers or lists of episodes. *Id.* ¶ 44.

In its motion, Peacock argues that Plaintiffs are not VPPA subscribers "when viewing publicly available pages with video lists or trailers for Peacock shows that anyone can view." Mem. in Supp. at 9. Peacock asserts that for the VPPA to apply, Plaintiffs "must be a subscriber to…the video content being disclosed, not just any video content offered by [Peacock]." *Id*. In other words, Peacock contends that Plaintiffs must request or obtain video materials while logged into their Website Accounts to be a VPPA subscriber. However, Peacock's arguments erroneously conflates the legal principles concerning the Subscriber-VTSP Relationship with the legal principles concerning the Subscription-Video Materials Connection.

As discussed above, the Subscriber-VTSP Relationship is an "ongoing commitment or **relationship between the user and the entity**." *Jackson*, 2023 WL 4670285, at *4 (emphasis added). That relationship is forged between the subscriber and the VTSP and evidenced by "payment, registration, establishment of an account, provision of personal information, receipt or delivery of goods or services, expressed association, and/or access to restricted content," *M. K. v. Google LLC*, 2023 WL 4937287, at *4, and "[n]o single factor is dispositive," *Harris*, 662 F. Supp. 3d at 1331. These so-called "*Ellis* factors"—which include payment, registration of an account, and a login—are

the indicia of the Subscriber-VTSP Relationship. This is why courts have held that to create the Subscriber-VTSP Relationship "an individual must do more than simply take advantage of a provided service." *Austin-Spearman*, 98 F. Supp. 3d at 671. This is also why courts are reluctant to find a Subscriber-VTSP Relationship in the context of free streaming services. *See, e.g.*, *Peterson v. Learfield Commc'ns, LLC*, 2023 WL 9106244, at \*19 (D. Neb. Dec. 8, 2023) ("This case illustrates the uncomfortable fit of the VPPA to free video streaming services: If Plaintiff accessed free videos on the Team Website by simply typing "huskers.com" into his web browser, he would undoubtedly not be a 'renter, purchaser, or subscriber of goods or services,' meaning he and members of his class would have no VPPA claim for having his PII allegedly disclosed to Facebook.").

Separate from the Subscriber-VTSP Relationship is the Subscription-Video Materials Connection. The Subscription-Video Materials Connection requires that the subscriber's subscription be to the VTSP's video materials because the VTSP is defined as being in the "business…of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4); *see Carter*, 670 F. Supp. 3d at 99. This is why courts are reluctant to find a Subscription-Video Materials Connection in the context of a subscriber's subscription to a VTSP's newsletter. *See id.* However, while the Subscription-Video Materials Connection must be established, Courts have "not create[d] a bright-line, categorical rule requiring that a subscription must provide access to exclusive video content not otherwise available to viewers without a subscription. This is just one factor that the Court considers in addition to the *Ellis* factors, and it is not dispositive or outcome determinative on its own." *Kuzenski*, 2023 WL 8251590, at \*5 n. 6.

What emerges from the case law is that the once the Subscriber-VTSP Relationship is forged (which may or may not be evidenced by a payment, registration of an account, or login) and the Subscriber-Video Materials Connection is established (which links the subscription to video materials

regardless if that access is exclusive), then the VPPA imposes a duty on the VTSP to not disclose the PII of its subscribers to third parties. *See* 18 U.S.C. § 2710(b)(1). Thus, in this case, once the Plaintiffs established Subscriber-VTSP Relationship with Peacock (which has been done) and the Subscriber-Video Materials Connection is established (which has also been done), Peacock may not disclose to Facebook that the Plaintiffs requested or obtained video materials from Peacock—no matter if the Plaintiffs are logged into their Website Accounts or not and no matter if the video materials are offered publicly by Peacock. The VPPA therefore has no "login requirement" as Peacock seeks to impose.

Peacock's arguments miss the mark by attempting to combine the case law that is reluctant to find the existence of a Subscriber-VTSP Relationship in the context of free streaming services and the case law that is reluctant to find a Subscription-Video Materials Connection in the context of a subscriber's subscription to a newsletter. On the one hand, Peacock cites case law and argues that a person is not a VPPA "subscriber" if that person only accesses free streaming services (i.e., no Subscriber-VTSP Relationship). On the other hand, Peacock cites case law and argues that a person is also not a VPPA "subscriber" if that person's subscription is only to a VTSP's newsletter (i.e., no Subscription-Video Materials Connection). But even assuming both of Peacock's arguments are valid, they do not result in the conclusion that Peacock advocates in this Court—because a person who is a "subscriber" of a VTSP because that person pays to accesses video materials inside a login page (i.e., yes Subscriber-VTSP Relationship) is still a subscriber of the VTSP if that person also accesses free video materials outside a login page (i.e., yes Subscription-Video Materials Connection). Thus, Plaintiffs, who have a Subscriber-VTSP Relationship with Peacock via their Website Account, payment, and more, are still VPPA subscribers when they request or obtain video materials while logged out of their Website Account and access materials made publicly available by Peacock because they still have the Subscription-Video Materials Connection.

Moreover, conspicuously absent from the VPPA is any exception to the VTSP's disclosure prohibition for when subscribers request or obtain video materials that the VTSP offers publicly for free to non-subscribers outside of the VTSP's login page. But Congress knew how to create exceptions when it wanted to create them because it created six exceptions where disclosures are permitted. *See* 18 U.S.C. § 2710(b)(2)(A)-(F). In fact, there is an exception that Peacock could have used, but did not—obtain the informed, written consent of the Plaintiffs to disclose their PII. *Id*. § 2710(b)(2)(B).

Also absent from the VPPA is a login requirement or similar requirement like a Blockbuster Card that would have existed in 1988. The login is Peacock's creation, not a creation of the VPPA. The fact that Peacock allows subscribers to request or obtain video materials while not logged in does not lessen the subscribers' protections under the VPPA. The function of Peacock's login is much like a Blockbuster Card in 1988. Both the login and Blockbuster Card serve as a "key" or "gatekeeper" to certain video materials. Peacock allows a person to access full-length videos if that person has a login much like Blockbuster allowed a person to check out a VHS tape if that person had a Blockbuster Card. But a person is still a Peacock subscriber even if he forgets to login as much as he still would be a Blockbuster subscriber even if he forgot his Blockbuster Card.[2]

Thus, the function of a login and the function of the Blockbuster Card is to identify a person's subscriber status, but it is not the subscriber status itself. As a means of subscriber identification, a login or Card may make it easier for VTSP to tell subscribers from non-subscribers, but the lack of a login or Card does not turn subscribers into non-subscribers. Here, Peacock allegedly knows or should know that Plaintiffs are subscribers without the login because Plaintiffs' Facebook ID and the "mid" ID cookie identifies them to Peacock. *See* CAC ¶ 43(g), (h). Given the obligations imposed by the

---

[2] Plaintiff's pre-motion letter described an apt hypothetical where Judge Bork forgot his Blockbuster card. *See* Doc. No. 16.

VPPA on VTSPs, Peacock has a duty to check whether Plaintiffs are subscribers. Peacock cannot stick its head in the sand and ignore who is making the request for video materials.

This reasoning was expressly adopted in two of the earliest and foundational VPPA cases—*Hulu* and *Ellis*. In *Hulu*, the plaintiffs alleged that they "signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services." *In re Hulu*, 2012 WL 3282960, at *7. The plaintiffs also alleged that "Hulu allowed a metrics company…to place code containing tracking identifiers on Plaintiffs' computers in the browser cache," which "allowed Plaintiffs' data to be tracked over long periods of time and across multiple websites, regardless of whether they were registered and logged in." *Id*. at *2. Based on these allegations, the Court found the plaintiffs to be Hulu subscribers under the VPPA, regardless of whether they were logged in to Hulu or not. *Id*. at *8; *see In re Hulu Priv. Litig.*, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014) ("The court previously held that Plaintiffs were consumers within the meaning of the Act.") (citing Order dated Aug. 10, 2012).

This principle was affirmed three years later in *Ellis* where the court agreed with "**the district court's observation in *Hulu* that a VPPA violation could occur when the plaintiffs were not logged on to Hulu's service**." *Ellis,* 803 F.3d at 1257 (citing *In re Hulu*, 2012 WL 3282960, at *8). *Ellis* even imagined the same hypothetical as discussed above: "The district court's observation in *Hulu* that a VPPA violation could occur when the plaintiffs were not logged on to Hulu's service is just another way of saying that the Washington video store could have violated the VPPA, even if Judge Bork forgot his video store rental card, had it been able to physically identify him as the person who rented a particular movie and then given that information to a third party." *Id*. Peacock fails to acknowledge that these two cases have already held that Plaintiffs are also subscribers when requesting or obtaining video materials offered by Peacock outside its login page.

Moreover, Peacock's interpretation is inconsistent with the purpose of the VPPA. *See Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 2024 WL 2853106, at \*6 n. 4 (U.S. June 6, 2024) (stating that a statutory term's meaning "will turn on the text, structure, context, history, and purpose"). "The purpose of the [VPPA] was "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Kuzenski*, 2023 WL 8251590, at \*3 (quoting S. Rep. 100-599 at 1 (1988)). "The [VPPA] accomplished this goal by 'allow[ing] consumers to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers.'" *Id*. "Thus, underlying the act is the principle 'that protection is merited when the consumer lacks control over the dissemination of the information at issue.'" *Id.*.

Given that the purpose of the VPPA was to "preserve personal privacy" because "protection is merited when the consumer lacks control over the dissemination of the information at issue," Peacock's interpretation would violate this purpose because it would take away the consumer's control over personal information divulged to Peacock and hand control over to Peacock. It is Peacock who decides whether and when to offer its video materials publicly for free to non-subscribers outside its login page. Peacock can take video material that is inside the login page today and offer it outside the login page tomorrow. In that way, what is protected PII today can be unprotected PII tomorrow, if Peacock's interpretation prevailed. This is certainly not what Congress intended with the passage of the VPPA.

Peacock argues that Plaintiffs are not subscribers under the VPPA when they are "viewing…publicly available webpages containing lists of videos…or trailers while not logged in to Peacock." Mem. in Supp. at 1. According to Peacock, the CAC fails to state a claim under the VPPA because "when viewing publicly available pages with video lists or trailers for Peacock shows that anyone can view, Plaintiffs are not 'subscribers' under the VPPA and therefore not 'consumers' subject to the statute's protections." *Id*. at 9. These arguments are red-herrings and strawman arguments.

Plaintiffs do not contend that viewing publicly available pages without more makes them subscribers under the VPPA. Courts have long held that "an individual must do more than simply take advantage of a provided service…in order to have acted as a subscriber of the provider." *Austin-Spearman*, 98 F. Supp. 3d at 671; *see Carter*, 670 F. Supp. 3d at 97 (citing *Austin-Spearman*). Here, Plaintiffs have done much more than the plaintiffs in *Austin-Spearman* and *Carter* (and all the other cases Peacock cites) and Plaintiffs are undisputedly subscribers under the VPPA.

Peacock next argues that Plaintiffs cannot show that their subscription is connected to Peacock's video materials because "there is no nexus between the Plaintiffs' subscription to Peacock and their viewing of promotional materials accessible to the public." Mem. in Supp. at 12. Peacock relies on several cases. *Id*. at 10-14. But none hold, as Peacock claims, that Plaintiffs are not VPPA subscribers when they request or obtain video materials while logged out of their Website Account or that Plaintiffs are not VPPA subscribers if they request or obtain video materials that are available to the public. Rather, these cases just stand for the proposition set forth long ago in *Austin-Spearman*, 98 F. Supp. 3d at 671, that viewing publicly available pages without more does not make a person a subscriber under the VPPA.[3] As noted above, Peacock wrongly conflates the Subscriber-VTSP Relationship case law with the Subscription-Video Material Connection case law

Peacock insists that "the calculus does not change because Plaintiffs allege they separately subscribe to other parts of Peacock's website." Mem. in Supp. at 13. Peacock claims that it "makes no difference where both products are video," i.e., the video materials offered inside and outside of Peacock's login page, because "[the product] the user subscribed to is separate from [the product]

---

[3] *See Carter*, 670 F. Supp. 3d at 97; *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1062 (S.D. Cal. 2023); *Gardener v. MeTV*, 681 F. Supp. 3d 864, 869 (N.D. Ill. 2023) (*Gardner I*); *Heather v. Healthline Media, Inc.*, 2023 WL 8788760, at *2 (N.D. Cal. Dec. 19, 2023); *Lamb v. Forbes Media LLC*, 2023 WL 6318033, at *13 (S.D.N.Y. Sept. 28, 2023); *Salazar v. Nat'l Basketball Ass'n*, 685 F. Supp. 3d 232, 245 (S.D.N.Y. 2023); *Golden*, 688 F. Supp. 3d at 165; *Gardner v. MeTV*, 2024 WL 779728, at *3 (N.D. Ill. Feb. 15, 2024) (*Gardner II*); *Kuzenski*, 2023 WL 8251590, at *5.

giving rise to their VPPA claim." *Id.* at 16. Peacock cites *Lamb, Gardener II* and *Kuzenski*. But none hold, as Peacock claims, Plaintiffs are not VPPA subscribers when they request or obtain video materials while logged out of their Website Account or that Plaintiffs are not VPPA subscribers if they request or obtain video materials that are available to the public. Rather, these cases just stand for the proposition set forth in *Austin-Spearman*, 98 F. Supp. 3d at 671, that viewing publicly available pages without more does not make a person a subscriber under the VPPA.[4]

There is also reason to doubt that these cases reached the correct result because the courts appear to have also conflated the Subscriber-VTSP Relationship case law with the Subscription-Video Material Connection case law. In *Gardner I*, the plaintiff set up a free account and provided personal information to the VTSP. The court found the plaintiff's Subscriber-VTSP Relationship to be "insufficient" because "only one [*Ellis*] factor is met here: registration," but it seemed to incorrectly discount the plaintiff's provision of personal information. Also, the plaintiff used his account to access the VTSP's video materials, but the court determined the plaintiff's subscription was "indistinguishable" from a newsletter like in *Carter* because both the account and the newsletter were "unconnected to their ability to access video content." The court thought that the plaintiff's account was "unconnected" like a newsletter because "there was no need to open [an] account to watch videos on the website," and the video content available on [the] website can be accessed by anyone." But is an erroneous comparison, as it applies Subscriber-VTSP Relationship principles (*Ellis* factors of "access to restricted content") to the Subscription-Video Material Connection question. The reason a newsletter does not establish the Subscription-VTSP Material Connection is not because anyone can sign up for a newsletter, but because the newsletter is a "non-video transaction [that] play[s] no part in a defendant's liability under the VPPA." *Carter*, 670 F. Supp. 3d at 99.

---

[4] *See Gardner II*, 2024 WL 779728, at *3; *Lamb*, 2023 WL 6318033, at *13;; *Kuzenski*, 2023 WL 8251590, at *5.

In the *Gardner II*, the court appears to have made the same errors as it did before. The court determined that the amended complaint "alleges no link between registering for a [VTSP] account and access to exclusive or restricted content," which is a conflation of the Subscriber-VTSP Relationship principles (i.e., the *Ellis* factors of registration and account and access to restricted content) with the Subscription-Video Material Connection principles (i.e., "alleges no link"). The court similarly determined that "[b]ecause the Amended Complaint does not allege that registering for an account provided plaintiffs access to video content that members of the public do not have, they are not subscribers within the meaning of the VPPA," which is the same conflation. The court again wrongly relies on newsletter cases.

In *Lamb*, Lamb (one of two plaintiffs) signed up for an account with the VTSP and provided his name and email address. Lamb's allegations were found to be lacking. However, it is unclear if the court found that Lamb failed to establish the Subscriber-VTSP Relationship or the Subscription-Video Material Connection or both because the court lumps together concepts from both areas of law. The court found that Lamb failed to plead that his "alleged subscription was connected to his ability to access video content" or that "his account allowed him access to [] videos on [the VTSP's] website," which suggests that the court found Lamb failed to establish the Subscription-Video Material Connection. However, the court continued by saying "…that any member of the public [i.e., someone without a VTSP account] would not otherwise have," which suggests that the court wrongly found that Lamb failed to establish the Subscriber-VTSP Relationship by incorrectly discounting the plaintiff's provision of personal information and incorrectly applying Subscriber-VTSP Relationship principles (*Ellis* factors of "access to restricted content") to the Subscription-Video Material Connection question just like the *Gardener I* and *II* court.

In *Kuzenski*, the plaintiff signed up for an account, but the court found this was not enough to establish a Subscriber-VTSP Relationship because "[u]nder the *Ellis* factors, Plaintiff only satisfies at most two factors: registration and express association." It is debatable if that is a correct application of *Ellis*, as the court seemed to take a particularly cramped view of the allegations and the reasonable inferences drawn therefrom. The court also found that the plaintiff did not allege a Subscription-Video Material Connection because he did not claim "that becoming a subscriber is connected in any way to Defendant's video content. Rather, the facts alleged indicate that becoming a subscriber provides a user with social media benefits…not access to videos."  The court further found that the "e-mail containing links to videos[] alone is insufficient as the videos are not alleged to be exclusive to subscribers and can be accessed by anyone visiting Defendant's Website." While the court was explicit about saying that it "was not creating a bright-line categorical rule requiring that a subscription must provide access to exclusive video content not otherwise available to viewers without a subscription," which is correct, the court's statements seem to be incorrectly applying Subscriber-VTSP Relationship principles (*Ellis* factors of "access to restricted content") to the Subscription-Video Material Connection question just like the *Gardener I, II,* and *Lamb* courts.

Finally, Peacock claims that historically "courts routinely held that viewing freely available web content does not make someone a VPPA subscriber even if they were subscribers of other content." Mem. in Supp. at 14. Peacock cites *Perry* and *Austin-Spearman*. But neither case holds, as Peacock claims, Plaintiffs are not VPPA subscribers when they request or obtain video materials while logged out of their Website Account or that Plaintiffs are not VPPA subscribers if they request or obtain video materials that are available to the public. Rather, these cases just stand for the proposition set forth in *Austin-Spearman*, 98 F. Supp. 3d at 671, that viewing publicly available pages without more does not

make a person a subscriber under the VPPA. *See Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017); *Austin-Spearman*, 98 F. Supp. 3d at 669, 671.[5]

### B. Lists of Available Videos and Video Trailers Are Video Materials Covered by the VPPA

Peacock next argues that lists of available video are not covered by the VPPA. Mem. in Supp. at 17. Peacock claims that "[t]here is no video a user can watch (or request) on that [list] page at all." *Id*. Peacock's argument is without merit.

> [T]he plain language of the VPPA regulates the disclosure of the 'title, description, or subject matter of any video tapes or other audio visual material.' *See* 18 U.S.C. § 2710(b)([2])(D). At a minimum, disclosing the name of the video game is sufficient to disclose the subject matter of the cut scenes embedded in the game. Therefore, Plaintiffs' allegations that [defendant] disclosed the names of the video games they purchased to Facebook is a sufficient allegation of disclosure of the identity of the video material.

*Aldana*, 2024 WL 708589, at *7 n.4. A list is a record of requests and the VPPA protects such records.

*See Golden*, 688 F. Supp. 3d at 161 ("The statute [VPPA], after all, was prompted by disclosure of the list of videos Judge Bork rented—not those he had viewed. *Cf.* S. Rep. 100–599, at 2 (1988) (VPPA purpose was 'extend privacy protection to records that contain information about individuals').");

*Feldman*, 659 F. Supp. 3d at 1021; 18 U.S.C. § 2710(b)(2)(D).[6]

Peacock ignores that the definition of PII "includes information which identifies a person as having **requested or obtained** specific video materials or services from a [VTSP]." 18 U.S.C. § 2710(a)(3) (emphasis added). When Plaintiffs click on a list of available *Longmire* episodes, they make

---

[5] Peacock claims that its interpretation is "consistent with the VPPA's legislative history and common sense." However, the legislative history does not, as Peacock would have it, support a reading of the VPPA that a subscriber is deemed to be a non-subscriber if the subscriber requests or obtains video materials that are also accessible to the public in the absence of an account. Rather, the legislative history supports the Plaintiffs' interpretation as explained above. Peacock also claims that its interpretation comports with common sense. Mem. in Supp. at 15-16. But Peacock only provides non-sensical hypotheticals that do not shed any light on the issues before the Court.

[6] Peacock cites *Osheske v. Silver Cinemas Acquisition Co.*, No. 22-cv-09463, 2023 WL 8188464, at *4 (C.D. Cal. Oct. 31, 2023). Mem. in Supp. at 18. To the extent Peacock is citing *Osheske* to suggest that a list of available movies is like a marquee's list of movies, its suggestion is inapt. A movie theater is not a VTSP, so the VPPA does not apply.

a request for video materials. *See* CAC ¶ 29. Peacock then discloses Plaintiffs' identity (Facebook ID) and the name of the video episodes requested (*Longmire*) to Facebook via the Pixel. *See id.* ¶¶ 29–36. It does not make a difference under the VPPA that Plaintiffs could not obtain the full-length video of a *Longmire* episode while not logged in. *See Sellers*, 2023 WL 4850180, at *4 (distinguishing "request" from "obtain"). To the extent Peacock argues that the disclosure to Facebook that Plaintiffs click on lists of specific episodes is not covered by the VPPA, Peacock's argument is without merit. The reference to *Longmire* is specific: It tells Facebook the name of the show and reveals that the subscriber has requested that show and is interested in its genre.

Peacock also argues that short video trailers are not covered by the VPPA because they are advertisements. Mem. in Supp. at 18. However, there is no authority supporting Peacock's argument. On the contrary, "[c]ourts across the country have agreed that short, pre-recorded videos constitute 'similar audio visual material' under the VPPA." *Aldana*, 2024 WL 708589, at *6; *see Sellers*, 2023 WL 4850180, at *3 ("The VPPA concerns providers of 'prerecorded video cassette tapes or similar audio visual materials' with no stated restriction as to length."). In addition, there is nothing in the VPPA text or case law that removes video advertisements from the definition of "similar audio visual materials." Peacock cites *Tapestry* and *General Mills* in support of its argument, but neither case holds that video advertisements are not covered by the VPPA. Rather, in each case, the court found that the defendant was not a VTSP because the delivery of videos was too "ancillary" to its business. *See Cantu v. Tapestry, Inc.*, 2023 WL 6451109, at *4 (S.D. Cal. Oct. 3, 2023); *Carroll v. Gen. Mills, Inc.*, 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023).[7]

Peacock asserts that it has "the same need to advertise" as any other business, and its "[m]arketing…cannot be allowable under the VPPA if done by a non-video programming provider

---

[7] Peacock suggests that trailers for shows and movies are not Peacock's goods or services because they "differ from the shows and movies themselves." Mem. in Supp. at 18. This just another faulty argument that trailers are not video materials.

[like General Mills] but prohibited if done by a video programming provider because such a speaker-based restriction on speech would run afoul of the First Amendment." Mem. in Supp. at 19. But the VPPA does not forbid Peacock from advertising any more than it allows General Mills to advertise. The VPPA forbids VTSPs from disclosing their subscribers' PII. Peacock ignores the crucial difference between Peacock and General Mills in the eyes of the VPPA: Peacock is a VTSP and General Mills is not. The VPPA does not prohibit Peacock's advertising, but it does create a duty upon Peacock to not disclose its subscribers' PII unlike General Mills, who is not a VTSP.[8]

## C. Disclosure of a URL is Disclosure of Specific Video Materials

Peacock next argues that "[d]isclosing a URL…is not a disclosure of specific video materials." Mem. in Supp. at 20. Peacock relies on *Martin v. Meredith*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023). But *Martin* is an outlier and numerous cases have rejected *Martin's* reasoning and have found that "electronic disclosures of a person's video-viewing history, even if not explicit, can violate the VPPA." *Ghanaat v. Numerade* Labs, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023). These courts hold that disclosure of a URL—which is simply a website address—that contains a title, description, or subject matter of a video is a disclosure of a video material covered by the VPPA. *See Lamb*, 2023 WL 6318033, at *10; *Golden*, 688 F. Supp. 3d at 161 n.10; *Ghanaat*, 689 F. Supp. 3d at 721; *Sellers*, 2023 WL 4850180, at *3; *Feldman*, 659 F. Supp. 3d at 1021–22. Like the plaintiffs in these cases, Plaintiffs sufficiently allege that Peacock uses the Pixel to disclose the name of the video, the URL, and the subscribers' Facebook ID. *See* CAC ¶ 27; *see, e.g.*, ¶¶ 30–33, 36, 58-59, 64, 89.

---

[8] Peacock's two-paragraph First Amendment argument does not sufficiently raise a Constitutional challenge to the VPPA before this Court. *See* Mem. in Supp. at 19. A proper Constitutional challenge requires notice to the Attorney General of the United States. Fed. R. Civ. P. 5.1. But to the extent the First Amendment is properly before ethe Court, the VPPA has survived similar First Amendment challenges. *See Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1034 (N.D. Cal. 2023).

Peacock also argues that "as to trailer pages specifically, the Complaint fails to identify a single URL allegedly shared with Facebook." Mem. in Supp. at 20. Peacock claims that "the Complaint does not identify or reference a single page with trailers on the Website" and Plaintiffs must allege "what those URLs are." *Id.* at 22. Plaintiffs have met the pleading requirements with respect to trailers and they are not required to plead the specificity that Peacock seeks. *Twombly*, 550 U.S. at 555 (stating that a complaint "does not need detailed factual allegations"). Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) . As recently explained, "[Plaintiffs] do[] not need to plead the circumstances of every alleged disclosure with particularity. This is especially so given the informational asymmetry at play; [the VTSP] would not, of course, have made [the plaintiff] privy to any potential disclosures." *Campos v. Tubi, Inc.*, 2024 WL 496234, at *9 (N.D. Ill. Feb. 8, 2024). "Here, [Peacock] has fair notice of the nature of the claim against it. Does it collect and then disclose users' viewing history and specific-individual-identifying information[?]." *Id.*

In any event, "[w]hether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss." *Ghanaat*, 689 F. Supp. 3d at 721; *see Harris*, 662 F. Supp. 3d at 1336 (finding similar factual issue not resolvable on a motion to dismiss).

**D.** **The CAC Adequately Alleges Peacock Knowingly Disclosed Specific Video Materials to Facebook**

Peacock last argues that the CAC does not adequately allege that Peacock knowingly disclosed Plaintiffs' PII to Facebook because "Peacock could not know or have access to Plaintiffs FIDs—an identifier set by Facebook that resides in a cookie that Facebook places on users' browsers and that only Facebook can read." Mem. in Supp. at 23. However, this exact argument has been rejected many times and courts have found allegations of "knowing" disclosure sufficient when the plaintiff alleges

that the VTSP deliberately installed the Pixel on its website knowing that it would disclose PII to Facebook, as is alleged in this case. *See* CAC ¶¶ 24–28; *Sellers*, 2023 WL 4850180, at \*5; *Adams v. Am.'s Test*, 680 F. Supp. 3d 31, 42-43 (D. Mass. 2023); *Harris*, 662 F. Supp. at 1336-37; *Belozerov v. Gannett Co.*, 646 F. Supp. 3d 310, 315 (D. Mass. 2022); *Czarnionka v. Epoch Times*, 2022 WL 17069810, at \*4 (S.D.N.Y. Nov. 17, 2022).

Peacock also argues that "[w]hen a user visits a public page in a non-logged in state and the Facebook pixel transmits information, Peacock has no way of knowing whether any information disclosed concerns a 'subscriber' (and therefore a 'consumer') or a casual viewer with no ongoing relationship with Peacock." Mem. in Supp. at 24. However, as alleged in the CAC, Peacock knows or should have known that Plaintiffs are subscribers because when Plaintiffs visit the Website in a non-logged in state they are identified by their Facebook ID and "mid" ID cookie. *See id*. CAC ¶ 43(g), (h).

The CAC adequately alleges that Peacock knowingly installed the Pixel on its website knowing that it would disclose PII to Facebook. *See, e.g.*, CAC ¶¶ 1, 3, 4, 24, 28, 43(e), 138. This is sufficient to allege a "knowing" disclosure. See *Sellers*, 2023 WL 4850180, at \*5; *Adams*, 680 F. Supp. 3d at 42-43; *Harris*, 662 F. Supp. at 1336-37; *Belozerov*, 646 F. Supp. 3d at 315; *Czarnionka*, 2022 WL 17069810, at \*4. The CAC also sufficiently alleges that Peacock knew that Plaintiffs are subscribers because when Plaintiffs visit the Website in a non-logged in state they are identified by their Facebook ID and they were tracked by a "mid" ID cookie. *See* CAC ¶ 43(g), (h). While Peacock may disagree with about its knowledge, such disagreements are fact questions that cannot be resolved on a motion to dismiss. *See Goldstein v. Fandango Media, LLC*, 2023 WL 3025111, at \*4 (S.D. Fla. Mar. 7, 2023); *Ambrose v. Bos. Globe Media Partners LLC*, 2022 WL 4329373, at \*2 (D. Mass. Sept. 19, 2022).

## V.    CONCLUSION

Plaintiffs have sufficiently stated a claim under the VPPA. Peacock's motion to dismiss should

be denied.[9]

Date: June 14, 2024

Respectfully submitted,

SCOTT SHAPIRO, COREY AMUNDSON,
AND TANYA MARSHALL, on behalf of
themselves and all others similarly situated,

/s/ Jeffrey J. Harrington

**FINKELSTEIN, BLANKENSHIP, FREI-
PEARSON & GARBER, LLP**
Todd S. Garber
One North Broadway Suite 900
White Plains, NY 10601
T: (914) 298-3281 ext 32803
E: tgarber@fbfglaw.com

**ZIMMERMAN REED LLP**
Caleb Marker
*Pro hac vice*
6420 Wilshire Boulevard, Suite 1080
Los Angeles, CA 90048
T: (310) 752-9387
E: caleb.marker@zimmreed.com

**ZIMMERMAN REED LLP**
Jeffrey J. Harrington
*Pro hac vice*
80 South 8th Street, Suite 1100
Minneapolis, MN 55402
T: (612) 341-0400
E: jeffrey.harrington@zimmreed.com

DANIEL WEISS, MCKENZIE EVANS, on
behalf of themselves and all others similarly
situated,

**LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.*

---

[9] Because this motion will be the first adjudication of Plaintiffs' claims on the merits, Plaintiffs respectfully request in the event the Court grants Peacock's motion to dismiss, in whole or in part, that the CAC be dismissed without prejudice and Plaintiffs be given leave to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified by the Court. *See Maroney v. Woodstream Corp.*, No. 19-CV-8294 (KMK), 2023 WL 6318226, at *10 (S.D.N.Y. Sept. 28, 2023).

*Pro Hac Vice* application forthcoming
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301

**HIRALDO P.A.**
Manuel Hiraldo, Esq.*
*Pro Hac Vice* application forthcoming
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
305.336.7466

**EISENBAND LAW. P.A.**
Michael Eisenband*
*Pro Hac Vice* application forthcoming
515 E las Olas Blvd. Ste 120,
Fort Lauderdale, FL 33301
MEisenband@Eisenbandlaw.com
954-533-4092